# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | )<br>)<br>) Case No. 1:14CR00023-002<br>)<br>) **OPINION AND ORDER**<br>)<br>) By: James P. Jones<br>) United States District Judge<br>) |
| v. | |
| **JOSEPH D. WEBB,** | |
| Defendant. | |

*Janine M. Myatt, Special Assistant United States Attorney, Abingdon, Virginia, for United States; John T. Stanford, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

The defendant, a federal inmate previously sentenced by this court, has filed a motion seeking compassionate release from his sentence. The motion is filed pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239 (2018), which permits a reduction in sentence after considering the factors set forth in 18 U.S.C. § 3553(a) and if the court finds "extraordinary and compelling reasons warrant such a reduction" and the reduction "is consistent with applicable policy statements issued by the Sentencing Commission." The defendant's motion has been fully briefed and is ripe for decision.

I.

Webb was sentenced by this court on August 15, 2016, after he was found guilty by this court in a bench trial of health care fraud and conspiracy to commit health care fraud, in violation of 18 U.S.C. §§ 1347 and 1349. He was determined to have a sentencing guideline range of 46 to 57 months, based on a total offense level of 22 and a criminal history category of II. However, he was sentenced below the guidelines to 36 months imprisonment. Webb did not begin his federal sentence until May 25, 2018, because he was first required to serve an unrelated state sentence. He has been diagnosed and treated for osteoarthritis in his hip, hepatitis C, chronic kidney disease, and high blood pressure. Presentence Investigation Report ¶¶ 62, 63, ECF No. 361; Bureau of Prisons Health Services 148, ECF No. 406. His present projected release date is March 29, 2021.

Webb is incarcerated at FCI Elkton, in Lisbon, Ohio. FCI Elkton has been a Covid-19 hotspot, with confirmed active cases of 333 inmates and 7 staff as of June 1, 2020. Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited June 1, 2020). It appears that at least nine inmates have died there of Covid-19. Deanne Johnson, *Another Elkton prison death attributed to COVID-19*, Salem News (Salem, Ohio), May 9, 2020, https://www.salemnews.net/news/local-news/2020/05/another-elkton-prison-death-attributed-to-covid-19/.

On April 6, 2020, the Federal Public Defender's Office contacted FCI Elkton on Webb's behalf to make a compassionate release request due to his various medical conditions and the rising number of coronavirus cases at the facility. The prison never confirmed receipt of his counsel's request and there has been no response from the Warden. On April 21, 2020, Webb filed a motion with this court seeking a reduction in his sentence based on his purported health risks from the ongoing coronavirus pandemic. In the alternative, he requested that his remaining time be converted to home confinement with his elderly parents. In its response filed April 29, 2020, the United States argued that Webb had not exhausted his administrative remedies because he had filed his present motion in this court before 30 days had passed from his request to the Warden.

The government also contended that the Bureau of Prisons ("BOP") has adopted adequate policies to protect inmates and staff from infection, and Webb's pre-existing conditions do not create exceptional circumstances to warrant a sentence reduction. The government further noted that the BOP has not identified Webb as eligible for home confinement based on its prioritization plan. The government concluded that Webb has an extensive disciplinary record rife with misconduct and drug use, and his plan to stay with his elderly parents is suboptimal due to their health problems and likely inability to supervise their son if he is released. Webb replied that the court should consider his request once the 30-day

response deadline for the Warden has passed, and he asserted that his prison disciplinary record and recidivism score should not foreclose his release under the current circumstances of the pandemic. He also reiterated that the combination of the pandemic with his pre-existing conditions amount to extraordinary and compelling reasons to reduce his sentence and release him to his relatives. Finally, Webb disputed the contention that the BOP is adequately protecting inmates.

II.

Thirty days have now elapsed since BOP received Webb's compassionate release request on April 6, 2020, and the Warden has not responded. Therefore, Webb's request is ripe for my consideration. The U.S. Sentencing Guidelines Manual ("USSG") advises that a court should consider three issues before turning to the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable: (1) whether extraordinary and compelling reasons warrant the reduction; (2) whether the inmate is a danger to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether such a reduction is consistent with the policy statement. USSG 1B1.13.

Webb is 59 years old. His parents have promised to supervise him at their home in Bristol, Virginia, if he is released. His parents are an elderly couple with numerous health problems that put them at risk if they become infected with the coronavirus. Webb has a limited and occasionally violent criminal history, including driving under the influence, kidnapping, and reckless endangerment because he fired

a gun. He has committed four infractions while incarcerated, each of which involved alcohol or drugs. Webb has a long substance-abuse history, which he has consistently denied is a problem. Webb started with marijuana and eventually expanded to opioids and benzodiazepines. He suffers from a number of health conditions, but they do not appear to make him particularly vulnerable to COVID-19. He has served approximately two-thirds of his 36-month sentence.

Importantly, the facts supporting his conviction are serious in nature. Healthcare fraud is a serious crime, because of the particular vulnerability of our healthcare reimbursement system. This healthcare fraud conspiracy was managed through the defendants' company, Bristol Labs, which billed for unnecessary urine drug screens for patients receiving treatment at Suboxone clinics for their opioid addiction. Webb's co-defendant wife owned Bristol Labs and she led the conspiracy with a physician, in which Webb acted as a participant. He was involved in the day-to-day operation of Bristol Labs, including marketing and working as a liaison between the employees and his co-defendant wife. Between February 2009 and April 2012, Bristol Labs billed Medicare, Medicaid, and nongovernmental private insurers $12,474,147 for unnecessary urine analyzer tests. The various health care benefit programs paid Bristol Labs a total of $1,142,942 for those claims.

Moreover, pretrial services records demonstrate that Webb failed to comply with court-ordered conditions of release. For example, Webb refused to let his

probation officer conduct a home visit, he failed to report to probation as ordered, and he eventually suffered from an overdose and severe intoxication that required hospitalization.  Webb has shown a consistent refusal to follow the rules both while on pretrial release and since he has been incarcerated, and he may continue this noncompliance if he were to be released at this stage.  Considering these facts and the § 3553(a) factors, including the need for deterrence and to protect the public, I find that Webb is not qualified for the extraordinary relief requested.

III.

For the reasons stated, it is **ORDERED** that the defendant's motion, ECF No. 401, is DENIED.

ENTER: June 1, 2020

/s/  JAMES P. JONES
United States District Judge